UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE ALABAMA

In re

FIRST BALDWIN BANCSHARES, INC.                    Case No. 13-00563-11-MAM

ORDER DENYING HOME BANCSHARES, INC. APPLICATION FOR SUBSTANTIAL
CONTRIBUTION CLAIM UNDER 11 U.S.C. § 503(B)(3)(D)

   Brian G. Rich, Berger Singerman, LLP, Tallahassee, Florida, Attorney for Home
   Bancshares, Inc.
   Michael G. Wilson, Hunton & Williams, LLP, and Douglas S. Draper, Heller,
   Draper, Patrick 7 Horn, LLC , Attorneys for Alesco Preferred Funding XV, Ltd.
   Kenneth A.Watson, Jones Walker, Mobile. Alabama, Attorney for Debtor
   Lawrence B. Voit, Silver, Voit & Thompson, P.C., Attorney for Rodney A. Pilot
   Travis A. Bedsole, Mobile, Alabama, Bankruptcy Administrator

This matter is before the Court on Home Bancshares, Inc.'s Application for Substantial Contribution Claim pursuant to 11 U.S.C. § 503(b)(3)(D). Alesco Preferred Funding XV, Ltd., through its collateral manager, ATP Management LLC, objected to the claim. The debtor, the Bankruptcy Administrator, and a creditor, Rodney A. Pilot, supported the objection. This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the court has the authority to enter a final order. For the reasons indicated below, the court is denying the application for substantial contribution.

FACTS

The parties submitted a stipulation of facts to the court that is the basis for this ruling and it is incorporated by reference. Home Bancshares, Inc. also submitted an affidavit of C. Randall Sims that was admitted into evidence without objection. It details the fees and expenses of

Home Bancshares professionals, Mitchell, Williams, Selig, Gates & Woodard, PLLC, and for DD&F Consulting Group, Inc., its attorneys and consultant, respectively.

LAW

An applicant for substantial contribution reimbursement has the burden of proving its entitlement to fees and expenses. *In re Communications Management & Information, Inc*., 172 B.R. 136, 141 (Bankr. N.D. Ga. 1994). Under 11 U.S.C. § 503(b)(3)(D), Home Bancshares must prove that it is "a[n] . . . equity security holder . . . making a substantial contribution in a case under chapter . . . 11." Home Bancshares must prove that it has standing as an equity security holder; that its fees and expenses are an administrative claim; and, that the fees and expenses substantially contributed to this case. Each issue is discussed below.

1.

Home Bancshares claim to equity security holder status is linked to its purchase of 35 shares of common stock of the debtor on or after April 11, 2013. It was an equity security holder at the time of the confirmation hearing in the case, but not at the time the case was filed or the Plan and Disclosure Statement were filed or the sale of the debtor to The First Bancshares, Inc. was negotiated. In fact, all of the time for which reimbursement is claimed predates the status of Home Bancshares as equity security holder by several months.

"Allowance of . . . [a] claim should as a matter of public policy and proper statutory construction be a condition precedent to allowance of . . . [an] administrative claim. An entity which is not in fact a creditor ought not to be taking administrative priority over unsecured creditors." *In re Two Plus Two, Inc.*, 1988 WL 120646, at *5 (Bankr. D. Minn. 1988). The *Two Plus Two* court disallowed a § 503(b)(3)(D) claim of a creditor whose underlying claim was disallowed in the debtor's bankruptcy case. The court explained that section 503's purpose is "to

promote meaningful creditor participation in reorganization proceedings." *Id*. at *3. For this reason, section 503 is only applicable to creditors, stockholders or committees.

The case of *In re Frog & Peach, Ltd.*, 38 B.R. 307 (Bankr. N.D. Ga. 1984), involved a potential purchaser of the debtor who claimed administrative expense status under section 503(a). That section states that "an entity may timely file a request for payment of an administrative expense." *Id*. at 308. Section 503(b) details what types of expenses are administrative expenses but the list is not exhaustive because section 503(b) uses the word "including." Therefore, the potential purchaser asserted it did not have to be a creditor to receive administrative expense status. However, the court denied the claim stating:

> [T]he policy of inducing creditor involvement in a bankruptcy proceeding would not be furthered by allowing . . . [a potential purchaser/noncreditor's] administrative claim.
>
> The Court is extremely reluctant to open a potential floodgate of claims by outsiders which transact with a debtor in bankruptcy, but whose claims are not specifically authorized under § 503(b).

*Frog and Peach, Ltd*., 38 B.R. at 310.

The only other case that the court found in the Eleventh Circuit involving a noncreditor filing a claim under section 503(b)(3)(D) was *In re Kidron, Inc*., 278 B.R. 626 (Bankr. M.D. Fla. 2002). In that case, the noncreditor/potential buyer also purchased a claim during the sales proceedings. The noncreditor/potential buyer only claimed fees and expenses for the time after it acquired its claim. Therefore, the issue of standing was avoided.

In light of the case law, this court concludes that Home Bancshares, Inc. lacked standing as a creditor or equity security holder to make a claim under section 503(b)(3)(D) at the time it incurred its claimed expenses. Although section 503(a) states that an "entity" can make a claim for administrative expenses, the court concludes that the specific should control the general on statutory construction grounds. *See National Cable & Telecommunications Ass'n, Inc. v. Gulf*

*Power Co.*, 534 U.S. 327, 336 (2002) (finding that "specific statutory language should control more general language when there is a conflict between the two"). Whereas, non-substantial contribution administrative claims may possibly be filed by noncreditors under § 503(a), the statute is very specific about the type of entity that may file substantial contribution claims under § 503(b)(3)(D). One must be an enumerated party to be compensated. Home Bancshares was an equity security holder. However, none of the time for which reimbursement is requested was incurred during the period that Home Bancshares was a stockholder. The status of Home Bancshares at a later date should not, nunc pro tunc, validate a claim for prior fees and expenses.

2.

All of the fees of Home Bancshares' attorneys and consultant shown in Home Bancshares affidavit are prepetition fees and expenses except for 4.7 hours of the consultant's time. According to the affidavit of Home Bancshares CEO, the only fees and expenses claimed to be a substantial contribution by Home Bancshares are those incurred prepetition. Can prepetition fees be claimed as an administrative expense under § 503(b)(3)(D)? The case law on this point is mixed but the clear majority of cases do not allow prepetition fees and expenses to be claimed as administrative expenses, even under § 503(b)(3)(D). The case of *In re Hackney*, 351 B.R. 179 (Bankr. N.D. Ala. 2006) provides an exhaustive survey of the cases. The court concludes that the majority view is appropriate. When a creditor or equity security holder incurs fees and expenses prepetition, the creditor does so at its own risk.

3.

Even if the court is incorrect about the standing of Home Bancshares to file a section 503 claim or the impropriety of allowing such a claim for prepetition expenses, the court still

concludes that the claim should be disallowed. Section 503(b)(3)(D) requires that the creditor show that its actions will:

> (1) "directly and demonstrably benefit" the estate, *Lebron v. Mechem Fin., Inc.,* 27 F.3d 937 (3d Cir. 1994); (2) "foster and enhance, rather than retard or interrupt the progress of reorganization," *In re Celotex*, 227 F.3d 1336, 1338 (11th Cir. 2000) (*quoting In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1253 (5th Cir. 1986)); and (3) be "considerable in amount, value or worth." *In re DP Partners, Ltd.,* 106 F.3d 667, 672 (citing *Webster's Third New International Dictionary* 2280 (4th Ed.1976)).

*In re Kidron*, 278 B.R. at 633.

Home Bancshares did not meet requirements (1) or (2). The First Bancshares did increase its purchase price for the debtor by $600,000 after Home Bancshares sent its letter offer to the debtor. Home Bancshares, at the confirmation hearing, indicated that it would probably have made further bids for the debtor if the court opened the case to a new competitive bidding process. However, the only 2 significant creditors of the debtor opposed such a process due to possible issues with the solvency of the bank owned by the debtor and looming FDIC takeover concerns.

Due to the views of the creditors, the actions of Home Bancshares were not welcome nor did they benefit any creditors who wanted Home Bancshares aid in raising the bid for the assets. The actions of Home Bancshares, due to the creditor-base makeup, interrupted the progress of reorganization. The actions taken by Home Bancshares' attorneys and consultants were typical and ordinary expenses incurred by a bidder for a distressed company's assets. There were no "special or unusual circumstances" that made the due diligence of the consultants or attorneys extraordinary. And, due to the lack of interest in a higher offer by the creditor classes, Home Bancshares knew it was taking a risk that its actions would be without support from any constituency. It knew that the debtor had settled on a purchaser and the only party to be

benefitted from Home Bancshares actions would be Home Bancshares if it could somehow get the court to let it have a part in the sale process. Its actions were solely for its own benefit.

For the reasons indicated, the application of Home Bancshares, Inc., for an administrative expense claim is DENIED.

Dated: May 30, 2013

_____
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE